Chase Glidden

v.

Cenia Nelson.

Bastard child—Liability of father for support.—It is necessary to show that the father of an illegitimate child made an express promise for his necessary maintenance, or adopted him as his own, or proceedings were held under the bastardy laws to render the father legally liable to support such child.

Appeal from the Circuit Court of De Kalb county; the Hon. Charles Kellum, Judge, presiding. Opinion filed August 20, 1884

This was an action of assumpsit commenced by appellee against appellant in the circuit court in April, 1883, to recover for the care, nurture and maintenance of the bastard child of the appellee which she claimed was begotten by the appellant, out of wedlock, and while she was an unmarried woman.

It appears from the evidence that some time from 1872 to 1875 the appellee entered service in the family of James Glidden, the father of appellant, as a house servant, and was there in that capacity at various times from that date up to a few months before this suit was brought. During that time James Glidden was absent from home more or less, and appellant, his son, lived at home and had charge in part of the farm and work. The wife of James Glidden, the appellant's mother, was at home nearly all the time and had charge of the house. The appellant is now thirty years old and was married in 1882. The appellee testifies that the child was three years old July 17, 1883, and that it was begotten by appellant while she was an inmate of his father's family, and that in consequence of her pregnancy in the spring of 1880, she was requested by appellant to go away, and that if she did not go away he would have to leave, and that she accordingly

went to the State of Wisconsin, and there, at the home of her sister, Mrs. Mason, gave birth to the child. She afterward returned to Glidden's.

The appellant denies all knowledge of the child until about a month after he was married, and denies having had sexual intercourse with the appellee, and denies any intimacy with her, and his father and mother testify that they never saw appellant have any improper intimacy with her, and the mother saw nothing different between appellant and appellee while at her house from the ordinary way in which an ordinary hired girl is treated, and did not know she was in the family way. Appellee had a husband, but she thinks he was dead and had been dead about ten years at the time she testified—got killed on a railroad. She got a letter from him that he was coming to see her on the train and there was an accident on the train that he was to come on, and she never heard from him after the letter. There was no express promise on the part of appellant to pay for the care and nurture of the child and he never adopted it as his own, and no proceedings in bastardy were ever commenced against him by appellee. There was a recovery of $600 by appellee, which judgment is appealed from. There is the evidence of appellee that appellant promised to send her money to Wisconsin, made just before she left Glidden's, but it clearly appears that this promise referred solely to her wages and nothing more.

Messrs. CARNES & DENTON, for appellant; that a complaint under the Bastardy Act must be filed by an unmarried woman, cited Durham v. People, 49 Ill. 233; Cook v. People, 51 Ill. 143; Volksdorf v. People, 12 Bradwell, 534.

There is no liability on the part of a father of an illegitimate child to support such child, except on an express promise or on proceedings instituted under the bastardy laws: 5 Wait's Actions and Defences, 49; Cameron v. Baker, 1 C. & P. R. 268; Furillio v. Crowther, 7 D. & R. R. 612; Moncrief v. Ely, 19 Wendell, 405; Wiggins v. Keizer, 6 Ind. 252; 2 Kent's Com. 215; Schouler's Domestic Relations, 2d Ed. 384; 1 Parsons on Contracts, 260.

Glidden v. Nelson.

Messrs. JONES & BISHOP, for appellee; cited Cameron v. Baker, 1 C. & P. 268; Hesket v. Going, 5 Ep. 131; Linnegar v. Hood, 5 C. B. 437; 1 Jacob's Fisher's Digest, 1018; Gore v. Hawsey, 3 F. & F. 507.

LACEY, J. Three main points are made by appellant as grounds for reversal. First, that there was no sufficient proof that the husband of the appellee was dead at the time of the alleged act of bastardy. Second, that there is no preponderance of proof that the appellant was the father of appellee's child, and thirdly, that under the proof there can be no recovery for want of an express promise on the part of the appellant to pay for the care and nurture of the child. It is claimed that there is not sufficient proof that seven years had elapsed from the time appellee last heard of her husband, to the time of the conception of the child, and hence no proof of the death of the husband; and as to the second point, that the evidence that appellant was the father of the child, rests alone on the testimony of appellee, contradicted by the positive denial of appellant, who, it is claimed, is corroborated by circumstances testified to by the appellant's father and mother, and that this proof is insufficient.

However this may be, we have not deemed it necessary to determine, as the decision of the case must rest on the third point made.

As to the third point, we find no evidence in the record to show that the appellant at any time made any express promise to pay for the care, nurture and expenses attending the birth of the child, or for any other matter concerning the maintenance of it; nor is there any proof that the appellant ever adopted the child as his own, or that any proceedings in bastardy were ever had against appellant by appellee.

We find upon examination, that the authority cited by counsel for the appellant fully sustains the doctrine contended for, that unless the father voluntarily adopts the child as his own, which he may do with the consent of the mother, he will not become liable for its necessary maintenance. That in other cases he is not liable except on an express promise or

an order of affiliation. This is the common law rule on the subject. But upon the strength of the natural or moral obligation arising out of the relation of the putative father to his child, an action at common law lies for its maintenance and support upon an express promise. Wait's Actions and Defences, Vol. 5, p. 49; Cameron v. Baker, 1 Carrington & Payne, 268; Furillio v. Crawther, 7 Dowling & Rylands, 612; Moncrief v. Ely, 19 Wend. 405; Wiggins v. Keizer, 6 Ind. 252; 2 Kent's Com. 15; Schouler on Domestic Relations, 2d Ed. 384; Parsons on Contracts, Vol. 1, page 260. In the absence of statutory regulations, the father is under no legal obligations to support his illegitimate child. The statute prescribes the only legal mode by which this support can be obtained. Simmons v. Hull, 21 Ala. 501; Marlett v. Wilson, 30 Md. 240.

This being the law, under the proof in this case there could be no cause of action, and the verdict of the jury was entirely without evidence to support it. The judgment will therefore be reversed.

Reversed.